**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

**MARLENE DENNIS, on behalf of
herself and all others similarly situated,**

      **Plaintiff,**

    **v.**                           **Civil Action No. 3:12cv616 (JAG)**

**NATIONSTAR MORTGAGE, LLC,**

      **Defendant.**

**DEFENDANT NATIONSTAR MORTGAGE, LLC'S MEMORANDUM
IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendant Nationstar Mortgage, LLC ("Nationstar" or "Defendant"), by counsel, submits this Memorandum in Support of its Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the *Federal Rules of Civil Procedures* against the Amended Class Action Complaint filed by Plaintiff Marlene Dennis ("Plaintiff"). For the reasons set forth below, Plaintiff's Amended Class Action Complaint fails to state a claim for which relief can be granted and must be dismissed with prejudice.

## I.    INTRODUCTION

Plaintiff filed this action on behalf of herself and a putative class of Virginia residents alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (the "FDCPA").

Count I of Plaintiff's Amended Complaint alleges that Nationstar's notice of servicing transfer (the "Notice of Servicing Transfer") and a letter left on the front door of Plaintiff's property (the "Door Tag") violate 15 U.S.C. § 1692e(11) because they do not contain a disclosure that the communication is from the debt collector and is intended to collect a debt, the so-called "mini-Miranda." Plaintiff's claim fails as a matter of law because the Notice of

Servicing Transfer and the Door Tag are not communications in connection with the collection of debt.  Accordingly, no mini-Miranda pursuant to section 1692e(11) is required.

Claims in the remaining Counts II, III, and IV arise from Nationstar's letter to Plaintiff containing the debt validation disclosures (the "FDCPA Letter").  Plaintiff alleges that the FDCPA Letter fails to disclose the amount of debt, the creditor to whom the debt is owed, and improperly states that a **written** dispute is required to prevent the assumption of debt validity, in violation of 15 U.S.C. § 1692g(a)(1), (a)(2), and (a)(3), respectively.  These claims are contrary to the disclosures on the face of the FDCPA Letter, which plainly state the amount of debt and the creditor to whom the debt is owed.  Further, the weight of authority and recent rulings demonstrate that the "in writing" language does not violate section 1692g(a)(3).

Plaintiff does not claim that she is confused about her debt, the amount owed, and to whom it is owed.  Neither does she claim that the alleged disclosure deficiencies have prevented her from exercising her rights to dispute the debt, its amount, or validity pursuant to the FDCPA.  Nor does Plaintiff allege that Nationstar has employed any harassing or abusive debt collection practices.

## II.    ALLEGED FACTS

### A.    Plaintiff's Loan.

On March 30, 2007, Plaintiff obtained a $632,000 home loan (the "Loan") from First Horizon Home Loan Corporation.  (Am. Compl. ¶ 8).  Plaintiff alleges that she became in default on her loan repayment obligations some time before August 15, 2011 and remained in default. (*Id.* at ¶¶ 20, 22).

**B.**   **Servicing Transfer to Nationstar and Nationstar's Welcome Package.**

Effective August 15, 2011, the Loan was transferred for servicing to Nationstar.  (*Id.* at ¶ 12).   On August 25, 2011, Nationstar sent Plaintiff a Welcome Package consisting of the following:

- A letter welcoming Plaintiff to Nationstar, notifying Plaintiff of Nationstar's contact information, services, payment options, workout solutions, and enclosing a payment coupon (the "Welcome Letter").  A copy of the Welcome Letter is attached hereto as **Exhibit 1**;[1]

- The Notice of Servicing Transfer pursuant to the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* (the "RESPA") (*Id.* at ¶ 12, Am. Compl. Ex. A); and

- The FDCPA Letter containing disclosures pursuant 15 U.S.C. § 1692g and advising Plaintiff of her rights under the FDCPA.  (*Id.* at ¶ 15, Am. Compl. Ex. B).

**C.**   **The Welcome Letter.**

Right above the payment coupon, the Welcome Letter contains a conspicuous disclosure in bold pursuant to 15 U.S.C. § 1692e(11) (the "Mini-Miranda"):   ***"Nationstar is a debt collector.  This is an attempt to collect a debt and any information obtained will be used for that purpose."*** Ex. 1.

**D.**   **The Notice of Servicing Transfer.**

The first sentence in the Notice of Servicing Transfer provides that the effective date of the servicing transfer is 08/15/11.  (Am. Compl. Ex. A).  The Notice also supplies Plaintiff with the contact information for Nationstar and explains Plaintiff's rights under the RESPA, including

---

[1] "The record on a motion to dismiss includes 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'"  *Pham v. Bank of N.Y.*, 856 F. Supp. 2d 804, 813 (E.D. Va. 2012) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007)).  Plaintiff references two letters contained in the Welcome Package but fails to mention of the Welcome Letter, which is key to Plaintiff's FDCPA claims.

the right to request loan servicing information via a qualified written request and Nationstar's obligations to conduct an investigation and make corrections to Plaintiff's account, if necessary. (*Id.*).  The Notice of Servicing Transfer also references the enclosed Welcome Letter.  (*Id.*)  Significantly, the Notice of Servicing Transfer does not list any amount due or the due date and does not request any payment.  Plaintiff does not dispute that Nationstar fully complied with the RESPA-required disclosures and does not allege that she ever sent a qualified written request or that Nationstar failed to respond to one.  Plaintiff claims that the Notice of Servicing Transfer violates 15 U.S.C. § 1692e(11) because it fails to list the mini-Miranda.  (Am. Compl. ¶¶ 14-16).

### E.     The FDCPA Letter.

Pursuant to subsection 1692g(a)(1), the FDCPA Letter lists the amount of debt owed by Plaintiff and provides a detailed break-down of the principal, interest, and other expenses:

> **Your total debt at the time of the transfer is $686,742.09.  This amount includes your outstanding Unpaid Principal Balance of $632,000.00, $47,013.73 in Interest, $513.51 in Fees, and $1,537.83 from expenses paid on your behalf.**

(Am. Compl. Ex. B) (emphasis added).

Nonetheless, Plaintiff claims that "Exhibit B does not contain the amount of the debt, in violation of 15 U.S.C. § 1692g(a)(1)."  (Am. Compl. ¶ 27).  Not surprisingly, Plaintiff provides no factual basis for this unsupported claim.

Pursuant to subsection 1692g(a)(2), the FDCPA letter also discloses the name of the creditor to whom the debt is owed: **"This debt is owed to Bank of NY Mellon as Trustee for FHASI 2007-AR3."**  (Am. Compl. Ex. B) (emphasis added).  Despite this disclosure, Plaintiff claims that "Exhibit B does not contain the name of the creditor to whom the debt is owed, in violation of 15 U.S.C. § 1692g(a)(2)."  (*Id.* at ¶ 28).  Plaintiff provides no factual basis for this conclusory claim.

4

Plaintiff's third claim concerns Nationstar's disclosure that, unless the validity of the debt is disputed in writing within thirty (30) days after receipt of the letter, the debt will be assumed valid by Nationstar. (Am. Compl. Ex. B). Plaintiff claims that the "in writing" language violates subsection 1692g(a)(3). (Am. Compl. ¶¶ 30-32).

## F.     **The Door Tag.**

Plaintiff alleges that, on or about May 30, 3012, Nationstar or its agent placed a Door Tag in the gap between the door and the frame. The Door Tag consisted of an unsealed envelope and a letter stating that it was important and advising Plaintiff to call Nationstar. (Am. Compl. ¶¶ 34-38). Although the Amended Complaint references Exhibit C, no such exhibit is attached.

Plaintiff does not allege that the Door Tag requested a payment from her or that it mentioned the Loan at all. Nonetheless, Plaintiff claims that the Door Tag violates the FDCPA by failing to contain the mini-Miranda pursuant to 15 U.S.C. § 1692e(11).

## II.     LEGAL STANDARD ON A MOTION FOR JUDGMENT ON THE PLEADINGS

The standard of review under a 12(c) motion is identical to the standard of review under a Rule 12(b)(6) motion. *Dauster v. Household Credit Services, Inc.*, 396 F. Supp. 2d (E.D. Va. 2005) (citations omitted) (granting 12(c) motion on an FCRA claim) (Lee, J.). A motion for judgment on the pleadings tests the sufficiency of the allegations of a complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 248 (4th Cir. 1999).

To survive dismissal for failure to state a claim, the "complaint's 'factual allegations must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.'" *Demetry v. Lasko Prods.*, 284 Fed. Appx. 14, 15 (4th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007)). Legal conclusions and labels are insufficient to state a claim under Rule 8(a) of the Federal Rules of Civil Procedure, and only allegations of fact are entitled to the presumption of truth. *See*

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."); *Twombly*, 550 U.S. at 555 (stating that a pleading that offers "legal conclusions" of "a formulaic recitation of the elements of a cause of action will not do."). Likewise, the court need not accept "unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

## III.   ARGUMENT

### A.   Count I Fails as a Matter of Law Because the Notice of Servicing Transfer and the Door Tag Are Not Communications in Connection with the Collection of Debt.

Plaintiff claims that the Notice of Servicing Transfer (Am. Compl. Ex. A) and the Door Tag violate the FDCPA because they do not contain the mini-Miranda required by 15 U.S.C. § 1692e(11). (Am Compl. ¶¶ 49-52). This claim fails as a matter of law because the Notice of Servicing Transfer and the Door Tag are not communications in connection with the collection of debt and are, therefore, not subject to the FDCPA.

### 1.   The Mini-Miranda Is Only Required in Communications in Connection with the Collection of a Debt.

The first sentence of section 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means **in connection with the collection of any debt**." 15 U.S.C. § 1692e. This statement qualifies all examples of such false, deceptive, or misleading representations that follow, including "[t]he failure to disclose in the initial written **communication** with the consumer … that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent **communications** that the communication is from a debt collector … ." 15 U.S.C. § 1692e(11) (emphasis added).

The FDCPA defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2); *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 232 (4th Cir. 2007) (finding that this definition is "broad[]"). The statute, however, does not define "in connection with the collection of any debt" and no circuit has established a bright line rule for what constitutes a communication in connection with debt collection. **This latter inquiry is crucial because, absent proof that the communication at issue is in connection with debt collection, the FDCPA does not apply**. *Penn v. Cumberland*, 883 F. Supp. 2d 581 (E.D. Va. 2012) (Ellis, J.) (stating "it is well-established that not every communication between a debt collector and a consumer is subject to the FDCPA and that the FDCPA applies only to communications that are intended to collect a payment"); *Hinton v. Providence Dane, LLC*, Case No. 1:10-cv-408, 2011 U.S. Dist. LEXIS 134794 (E.D. Va. 2011) (Buchanan, J.) (finding defendant did not violate section 1692e because "the failure to disclose the nature of the communication creates liability only where it takes place 'in connection with the collection of any debt'").

For the reasons stated below, neither the Notice of Servicing Transfer nor the Door Tag were made "in connection with the collection of any debt." Therefore, the mini-Miranda was not required.

### 2. "In Connection With Collection of Any Debt" Is Determined by an Objective Standard.

Prior to addressing the merits of Plaintiff's claim, it is important to clarify the standard that applies in determining whether a communication is "in connection with the collection of any debt." While the Fourth Circuit has not ruled on the issue, the Seventh Circuit has held that an objective standard, rather than the least sophisticated consumer standard, applies in determining

whether a communication was sent in connection with collection of a debt.  *Ruth v. Triumph P'Ships*, 577 F.3d 790, 798 (7th Cir. Ill. 2009).  In reaching its holding, the court explained:

> … [W]e must conclude that the proper standard is an objective one. **To hold … that a communication is made in connection with collection of a debt … only if the unsophisticated consumer recognizes it as such, would stand the statute on its head. Unscrupulous debt collectors could shield themselves from liability simply by disguising their collection letters as something else.** The more deceptive the letters were, the more likely they would escape FDCPA liability. **Needless to say, Congress' intent in enacting the FDCPA was not to encourage debt collectors to deceive consumers; in fact, it was just the opposite. Thus, we conclude that whether a communication was sent "in connection with" an attempt to collect a debt is a question of objective fact, to be proven like any other fact.  It need not be established by extrinsic evidence of what the unsophisticated consumer might think.**

*Id.* at 798 (emphasis added); *see also South v. Midwestern Audit Servs.*, 2010 U.S. Dist. LEXIS 129474 (E.D. Mich. Dec. 8, 2010) (adopting the objective standard set forth by the Seventh Circuit in *Ruth*); *Thompson v. BAC Home Loans Servicing, L.P.*, 2010 U.S. Dist. LEXIS 30891 (N.D. Ind. Mar. 26, 2010) (same).

The Seventh Circuit's rationale in *Ruth* is highly persuasive because it promotes the FDCPA's basic purpose of protecting consumers from abusive debt collection practices. Accordingly, an objective standard applies here in determining whether the Notice of Servicing Transfer and the Door Tag are communications in connection with collection of the debt.  Under this standard, here, the Notice of Servicing Transfer and the Door Tag themselves and on point authority demonstrate these are not such communications.  Therefore, they do not trigger an obligation to include the mini-Miranda warning pursuant to section 1692e(11).

### 3.    Factors Used in Determining Whether a Communication Is "in Connection with Collection of Any Debt."

Generally, "the absence of a demand for payment is a critical factor in determining whether a communication is an attempt to collect a debt." *South v. Midwestern Audit Servs.*, Case No. 09-cv-14740, 2010 U.S. Dist. LEXIS 129474, at *22-23 (E.D. Mich. Dec. 8, 2010)

(citing *Bailey v. Sec. Nat'l Servicing Corp.*, 154 F.3d 384, 389 (7th Cir. Ill. 1998)).  However, it is not the only factor.  Courts should also consider such additional factors as "purpose and context" of the communication and should make a "commonsense inquiry" of whether the communication falls within the purview of the FDCPA.  *South*, 2010 U.S. Dist. LEXIS 129474, at *22-23 (citing *Gburek*, 614 F.3d at 385); *see also Thompson v. BAC Home Loans Servicing, L.P.*, Case No. 2:09-cv-311, 2010 U.S. Dist. LEXIS 30891, at *12-15 (N.D. Ind. Mar. 26, 2010) (applying the above factors in determining whether a communication was in connection with collection of a debt).

In *Thompson*, the letter at issue was also sent pursuant to RESPA and notified plaintiff of the transfer of servicing rights.  2010 U.S. Dist. LEXIS 30891, at *7-8.  Similar to the Notice of Servicing Transfer here, the *Thompson* letter identified the previous servicer, provided contact information for the new servicer, and set forth plaintiff's rights under the RESPA.  *Id.* at *8-9.  However, unlike the Notice of Servicing Transfer here, which contains no payment coupon or amount due, the *Thompson* letter attached a payment coupon with the amount due.[2]  Nonetheless, the court held that the *Thompson* letter was **not** in connection with collection of the debt because it did not contain a due date, did not raise the issue of plaintiff's default, did not purport to assess late fees, and did not threaten enforcement proceedings.  *Id.* at *12-13.

Courts nationwide have reached the same conclusion on similar facts.  *See e.g., McCready v. Jacobsen*, Case No. 06-2443, 2007 U.S. App. LEXIS 9651 (7th Cir. April 25, 2007) (holding that letter that did not demand payment but simply provided at plaintiff's request "an accounting of how his security deposit had been applied toward unpaid rent and repairs" was not a collection letter subject to the FDCPA); *Gillespie v. Chase Home Finance, LLC*, Case No.

---

[2] Here, the payment coupon is attached to the Welcome Letter, which is not at issue in Plaintiff's Complaint and which contains the mini-Miranda.  Ex. 1.

9

3:09-cv-191-TS, 2009 U.S. Dist. LEXIS 108837 (N.D. Ind. Nov. 20, 2009) (holding that letters were not the type of communications proscribed by Section 1692 where the letters only "advised the mortgagors that their delinquent debts had been turned over to the … Homeowner's Assistance Department ….  Although ensuring payment of the debts cannot be denied as the Defendant's ultimate goal, the letters themselves did not provide terms of payment or deadlines, threaten further collection proceedings, or demand payment in any form."); *Mabbitt v. Midwestern Audit Serv., Inc.*, Case No. 07-11550, 2008 U.S. Dist. LEXIS 20446 (E.D. Mich. Mar. 17, 2008) (holding that letter that made no demand or attempt to obtain payment of a debt and instead notified consumer that "an outstanding balance ha[d] been transferred to her new account" was not a communication in connection with the collection of any debt.).

**4.      The Notice of Servicing Transfer Was Not in Connection with Debt Collection.**

Here, the critical factor – absence of the demand for payment – demonstrates that Plaintiff has failed to state a claim for which relief may be granted.  Unlike *Thompson*, which included a payment coupon at the bottom of the letter, the Notice of Servicing transfer here contains no such coupon.   Although the Notice explains that payments can be made online or mailed to Nationstar, the Notice of Servicing Transfer does not list any amount due or the due date.  *Cf. South*, 2010 U.S. Dist. LEXIS 129474, at *23-26 ("Although the letter states, '[f]or [y]our convenience in making payment, [the above] amount will be transferred in ten (10) days to your present account,' it does not set a deadline for when the transferred balance must be paid, nor does it otherwise attempt to provide a payment schedule"); *Bailey*, 154 F.3d at 388-89 ("The important letter dated January 4 does not 'demand' any payment whatsoever, but merely informs the Baileys about 'the current status' of their account. The due dates listed in the letter are all prospective. Surely this is not the type of dunning letter that describes a communication related

10

to 'the collection' of a debt").   As in *Thompson*, the Notice of Servicing Transfer does not even mention Plaintiff's default, does not attempt to collect late fees or missed payments, and does not threaten any enforcement proceedings.  The payment information is "akin to the informational account-status letter in *Bailey* which made no demand for payment."  *South*, 2010 U.S. Dist. LEXIS 129474, at *24 (citing *Bailey*, 154 F.3d at 386).[3]

In addition to the absence of a demand for payment, the purpose and context of the Notice of Servicing Transfer unequivocally demonstrates that it was not in connection with debt collection.  The Notice provides that "the law requires Nationstar Mortgage send you this notice no later than 15 days after the effective days of the [servicing] transfer."  (Ex. A).  The Notice goes on to set forth Plaintiff's right to send a qualified written request and Nationstar's obligation to respond within 30 business days.  (*Id.*)  As in *Thompson*, the Notice of Servicing Transfer was sent to satisfy the RESPA requirements of notifying Plaintiff that there has been a change in loan servicer and describe Plaintiff's rights under RESPA.  (Am. Compl. Ex. A).  *See Oppong v. First Union Mortg. Corp.*, 566 F. Supp. 2d 395, 403 (E.D. Pa. 2008) (finding that a notice of servicing transfer pursuant to RESPA was not subject to the FDCPA); *In re Pultz*, 400 B.R. 185, 190-92 (Bankr. D. Md. 2008) ("The automatic stay [on debt collection] does not bar a lender from … from making … notification[s] that are required by RESPA.").  In summary, the Notice of Servicing Transfer cannot objectively be read as an attempt to collect a debt. Therefore, the FDCPA does not apply and Plaintiff's claim for failure to include the mini-Miranda pursuant to section 1692e(11) should be dismissed with prejudice.

---

[3] The only mention of a payment coupon is a reference to "the enclosed Welcome Letter." However, the Welcome Letter contains a conspicuous mini-Miranda warning pursuant to section 1692e(11), and Plaintiff does not allege that the Welcome Letter violates the FDCPA.

**5.    The Door Tag Was Not a "Communication" and Was Not Made "In Connection with Debt Collection."**

Unlike the Notice of Servicing Transfer, which contains some information regarding the Loan, the Door Tag conveys no information regarding the debt at all.   The only information conveyed is a request that Plaintiff call and the word "Important."[4]   *See, e.g., Zortman v. J.C. Christensen & Assocs.*, 870 F. Supp. 2d 694, 707 (D. Minn. 2012) (finding voice mails that did not identify the debt or consumer were not communications within the meaning of the FDCPA. "The inclusion in its voicemail message of the word 'important' does not convert JCC's simple self-identification and telephone number into an indirect conveyance of information about a debt").   None of these words convey information regarding a debt.   Therefore, Plaintiff fails to state a claim for which relief can be granted because the Door Tag is not a "communication" within the meaning of the FDCPA.   15 U.S.C. § 1692a(2) (defining "communication" as "conveying of information regarding a debt").

Assuming for the sake of the argument that the Door Tag was a "communication," the mini-Miranda requirement is still not triggered because the Door Tag was not "in connection with collection of a debt," as required by section 1692e.   Similar to the Notice of Servicing Transfer, the Door Tag here does not demand any payment, does not contain the amount due or the due date, does not mention Plaintiff's default, and does not threaten enforcement proceedings.

Significantly, the inclusion of the mini-Miranda could in itself violate the FDCPA by publicizing Plaintiff's status as a debtor to any third party who could have come across the Door

---

[4] Loan servicers attend to many important matters when dealing with ownership and occupancy of a property in default.  For example, loan servicers need to determine whether the property is occupied, vacant, or abandoned, and whether it needs to be winterized and protected from vandalism.  *See infra Mbaku v. Bank of Am., N.A.*, 2013 U.S. Dist. LEXIS 15073 (D. Colo. Feb. 1, 2013).  None of the property preservation concerns convey information regarding the debt.

Tag.  15 U.S.C. 1692c(b) ("a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer …").  For example, in *Mbaku v. Bank of Am., N.A.*, 2013 U.S. Dist. LEXIS 15073 (D. Colo. Feb. 1, 2013), plaintiff argued that a notice posted by defendant on the plaintiff's front door violated the FDCPA's section 1692c(b) because it disclosed plaintiff's status as a debtor.  *Id.* at *8-9.  The court disagreed because the notice at issue did not identify the debt or the debtor and only stated that the property was determined to be vacant and that this information would be reported to the loan servicer.  *Id.*  The Congress could not have intended to place debt collectors in such proverbial catch-22 when it enacted the FDCPA.  *Strand v. Diversified Collection Service*, 380 F.3d 316, 318 (8th Cir. 2004) (the FDCPA should not be interpreted "to create bizarre results likely beyond the scope of Congress's intent in enacting the statute").   Because the Door Tag is not a communication in connection with the collection of a debt, Plaintiff's claim for failure to include the mini-Miranda should be dismissed with prejudice.

**B.**    **Counts II, III, and IV Should Be Dismissed with Prejudice Because They Fail to State a Claim for Violations of Section 1692g.**

Plaintiff's claims that the FDCPA Letter fails to comply with section 1692g disclosure requirements fail because: (1) the FDCPA Letter states the amount of debt due; (2) the FDCPA Letter identifies the creditor to whom the debt is due; and (3) the "in writing" language does not violate sub-section 1692g(a)(3).

**1.**    **Standard of Review for Section 1692g Claims**

In the Fourth Circuit, the courts apply a "least sophisticated consumer" standard in evaluating section 1692g claims.  *See United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 138 (4th Cir. 1996).   "While protecting naive customers," the "least sophisticated consumer" standard "prevents liability for bizarre or idiosyncratic interpretations of collection notices by

preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." *Id.* at 136; *see also Johnson v. BAC Home Loans Servicing*, 867 F. Supp. 2d 766, 776 (E.D.N.C. 2011) (stating "Although naive, the least sophisticated debtor is not 'tied to the very last rung of the intelligence or sophistication ladder.') (quoting *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009)).

Accordingly, when determining whether certain language violates section 1692g(a), this Court is guided by two principles: "First, there is no requirement that a debt collector quote the language of § 1692g(a) verbatim. Second, the communications must be examined as whole, not sentence-by-sentence, because the least sophisticated consumer standard does not go so far as to provide solace to the willfully blind or non-observant." *Vitullo v. Mancini*, 684 F. Supp. 2d 747 (E.D. Va. 2010) (internal citations omitted).  Applying the above standards to Nationstar's motion for judgment on the pleadings, Plaintiff's Amended Complaint fails to state a claim for which relief can be granted and should be dismissed.

### 2.     Plaintiff Fails to State a Claim for Failure to Disclose the Amount of Debt (Count I).

The FDCPA requires that the debt collector disclose "the amount of the debt" in its initial written communication in connection with debt collection or within five days after such initial communication. 15 U.S.C. 1692g(a)(1).  Although the statute does not explain "the amount of the debt" and the Fourth Circuit has not addressed the meaning of section 1692g(a)(1), other courts have interpreted subsection (a)(1) and their holdings demonstrate that Nationstar's disclosure of the amount of debt due complies with the FDCPA disclosure requirements.

### a.     *Nationstar Disclosed the Outstanding Principal, Interest, and Fees.*

Federal courts have interpreted subsection (a)(1) to require that the disclosed amount of debt include not only the outstanding principal balance but also interest and fees owed by

consumer.  *See, e.g., Beasley v. Sessoms & Rogers, P.A.*, Case No. 5:09-cv-43, 2010 U.S. Dist. LEXIS 52010, *13-16 (E.D.N.C. Mar. 1, 2010) (dismissing plaintiff's claim under section 1692g(a)(1) because the letter disclosed the entire outstanding balance of the debt); *see also Williams v. OSI Educ. Servs.*, 505 F.3d 675, 679 (7th Cir. 2007) (dismissing plaintiff's FDCPA claim because the letter disclosed the outstanding principal, interest, fees, and total due).

The amount of debt disclosure, which the United States District for the District of North Carolina found sufficient in *Beasley*, fell far short of the detailed breakdown provided by Nationstar here.  The *Beasley* letter simply stated that "The outstanding balance of the debt is $1,211.84."  *Id.* at *3.  Here, although Nationstar was not required to provide a break down as to principal, interest, and other fees, Nationstar went above and beyond listing the full outstanding balance and itemized it into outstanding principal, interest, and fees.  Therefore, the FDCPA Letter does not violate the "amount of debt" disclosure requirement.

b. <u>*Disclosure of the Amount of Debt Due As of a Specific Date Does Not Violate the FDCPA*</u>*.*

Here, the FDCPA Letter discloses the amount of debt due as of the time of servicing transfer.  (Am. Compl. <u>Ex. B</u>).  In a case on point, the District Court for the Northern District of Illinois refused to find a violation where the debt was listed as of a certain date other than the date of mailing.  *Jolly v. Shapiro*, 237 F. Supp. 2d 888, 893 (N.D. Ill. 2002).  In *Jolly*, the debt collection letter read: "As of December 13, 2001, our client has advised that the amount of the debt is $74,671.69."  *Id.* at 889.  Plaintiff claimed that such disclosure violated the FDCPA because it did not comply with the Seventh Circuit's "safe harbor" language in *Miller v.*

*McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000).[5]  *Id.* at 891.  The court disagreed finding critical the Seventh Circuit's emphasis that deviations from the safe harbor language do not constitute an FDCPA violation as long as the language is not confusing.  *Id.* at 893.  Accordingly, the court concluded that "a collection letter which states either the amount due as of the date of the letter or as of a specific date is in compliance with § 1692g."  *Id.*; *cf. Ingram*, 2003 U.S. Dist. LEXIS 7475, *10 (denying defendant's motion to dismiss; finding, "unlike the letter in *Jolly*, [the letter in *Ingram*] did not provide a specific statement as to the effective date of the stated amount due").

Defendant acknowledges that some courts have erroneously interpreted *Miller* to **require** "that the total amount of the debt be stated as the total amount due on the date a collection letter is sent."  *Jackson v. Aman Collection Serv.*, Case No. 01-cv-0100, 2001 U.S. Dist. LEXIS 22238 (S.D. Ind. Dec. 14, 2001); *see also Dragon v. I.C. Sys.*, 483 F. Supp. 2d 198 (D. Conn. 2007) (same).  Here, the FDCPA Letter is distinguishable from the letters in *Jackson* and *Dragon* **in a critical respect**.  In those cases, the letters did not state **any date** as of which the amount of debt was due and were, therefore, confusing.  *Jackson.*, 2001 U.S. Dist. LEXIS 22238, at *3 (demanding payment for "$463.47 TOTAL DUE PLUS ACCRUING INTEREST"); *Dragon.*, 483 F. Supp. 2d at 202 (staing, "Principal Owed: $136.64; BALANCE DUE: $136.64.").  In

---

[5] Writing for the Seventh Circuit in *Miller*, Judge Posner set forth a "safe harbor" language, which assures compliance with the "amount of debt" disclosure requirement.  *Id.* at 876.  The first sentence of the "safe harbor" provision reads:  "As of the date of this letter, you owe $ [the exact amount due]."  *Id.*  Notably, the Seventh Circuit "[did] not hold that a debt collector must use this form of words to avoid violating the statute … ."  *Id.*  "Although the safe harbor was offered in an attempt both to bring predictability to this area and to conserve judicial resources, it is compliance with the statute, not [the] suggested language, that counts."  *Williams v. OSI Educ. Servs.*, 505 F.3d 675, 680 (7th Cir. 2007); *see also Ingram v. Corporate Receivables, Inc.*, Case No. 02-cv-6608, 2003 U.S. Dist. LEXIS 7475, *9 (N.D. Ill. May 2, 2003) ("*Miller* made clear that the 'safe harbor' language was just that: a safe harbor, and not a statutory requirement.").

16

contrast, the FDCPA Letter here states that the amount of debt is calculated as of "the date of the [servicing] transfer" expressly listed in the Notice of Servicing Transfer and the Welcome Letter, which were enclosed with the FDCPA letter.  (Am. Compl. Ex. A) (reading, "You are hereby notified that the servicing of your mortgage … is … transferred from FIRST HORIZON HOME LOANS to Nationstar Mortgage LLC, effective 08/15/11"); Ex. 1 (reading, "Effective 08/15/11 the servicing of your loan will be transferred … to Nationstar").  As in *Jolly*, Nationstar has identified the amount due as of the specific date, thus eliminating any potential confusion by the consumer and bringing the FDCPA Letter in full compliance with the FDCPA.

In sum, Plaintiff's threadbare legal conclusion that the FDCPA letter does not contain the amount of debt is unsupported by law or the language of the letter itself.  Plaintiff's claim is, therefore, not entitled to any deference under the *Twombly* standard and is plainly contradicted by the clear and conspicuous disclosures on the face of the FDCPA letter.  *Twombly*, 550 U.S. at 555 (allegations must be "facially plausible" and "legal conclusions … will not do").  This Court dismissed similar FDCPA claims that are not grounded in any factual or legal support.  *See, e.g., Sunga v. Rees Broome, P.C.*, 1:09cv1119, 2010 U.S. Dist. LEXIS 25590, 9-10 (E.D. Va. Mar. 18, 2010) (finding plaintiff's claim that the fees dues on her loan were false were threadbare allegations which did not state a claim for relief); *Caballero v. Am. Mortg. Network*, 1:11cv622, 2011 U.S. Dist. LEXIS 87210, 20-21 (E.D. Va. 2011) (dismissing plaintiffs' claims under § 1692e(10) because plaintiffs failed to allege any facts in support of its conclusory assertion that defendants used false, deceptive, or misleading statements or means to collect a debt); *Johnson v. BAC Home Loans Servicing, LP*, 5:10-CV-303, 2011 U.S. Dist. LEXIS 112245, 28-30 (E.D.N.C. Sept. 29, 2011) (dismissing FDCPA claims because "Plaintiff has not alleged any facts from which the court could draw a reasonable inference that the FDCPA Defendants made a false

representation" in connection with foreclosure proceedings). Plaintiff's legal conclusions here are likewise inadequate to state a plausible claim for relief and should be dismissed with prejudice.

**3.     Plaintiff Fails to State a Claim for Failure to Disclose the Creditor to Whom the Debt is Owed (Count III).**

Plaintiff's claim for failure to disclose the creditor is similarly deficient. The FDCPA only requires that a communication in connection with the collection of debt disclose the "name of the creditor to whom the debt is owed." 15 U.S.C. § 1692g(a)(2). Here, the FDCPA Letter plainly states that "[the] debt is owed to Bank of NY Mellon as Trustee for FHASI 2007-AR3." (Am. Compl. Ex. B). Even the least sophisticated consumer cannot be confused by this clear statement, which has only one possible interpretation, *i.e.*, that the name of the creditor to whom the debt is owed is Bank of NY Mellon as Trustee for FHASI 2007-AR3. Consequently, Plaintiff's bare assertion that the FDCPA Letter "does not contain the name of the creditor to whom the debt is owed … ," (Am. Compl. ¶ 28), is neither plausible on its face nor is it supported by the plain language of the FDCPA. Therefore, it is not entitled to the presumption of truth even under the deferential motion to dismiss standard. *Iqbal*, 129 S. Ct. at 1950 (courts do not have to accept legal conclusions and unwarranted inferences).

In her Amended Complaint, Plaintiff cites two cases from the Eleventh Circuit Court of Appeals, which are not relevant to the instant case and do nothing to advance Plaintiff's position. Am. Compl. ¶ 25 (citing *Bourff v. Rubin Lublin, LLC*, 674 F.3d 1238 (11th Cir. 2012) and *Shoup v. McCurdy & Candler*, 465 Fed. Appx. 882 (11th Cir. 2012). In *Bourff*, Plaintiff sued under a different FDCPA provision, section 1692e (false and misleading communications). 674 F.3d at 1240. *Bourff* is factually and legally distinguishable because the debt collector there listed a loan servicer as the creditor to whom the debt is owed and the court held that the loan servicer was

not such creditor. *Id.* In *Shoup*, defendant debt collector identified MERS as the creditor to whom the debt is owed and plaintiff sued under section 1692g(a)(2). 465 Fed. Appx. at 883. The Eleventh Circuit found that plaintiff stated a plausible claim for relief because plaintiff alleged that she did not owe a debt to MERS as MERS was merely "a company that tracks, for its clients, the sale of promissory notes and servicing rights." *Id.* at 883-84. *Bourff* is not relevant here.

Unlike the defendant in *Bourff*, Nationstar did not identify a loan servicer as the creditor to whom the debt is owed. Indeed, in the FDCPA Letter, Nationstar expressly clarified the difference between the two: "This debt is owed to Bank of NY Mellon as Trustee for FHASI 2007-AR3, **but is being serviced by Nationstar**." (Am. Compl. <u>Ex. B</u>) (emphasis added). Further, unlike *Shoup*, Nationstar did not identify MERS as the creditor to whom the debt is owed but properly disclosed the securitized loan trust in which the loan is currently held and to which the debt is therefore owed. This is why Plaintiff does not – and cannot – proffer that any other entity should have been identified as the "creditor to whom the debt is owed."

This Court has dismissed similar unsupported claims and the same result should obtain here. *See, e.g., Dikun v. Streich*, 369 F. Supp. 2d 781, 785 (E.D. Va. 2005) (dismissing plaintiff's FDCPA claim that defendant failed to provide the name of the creditor because plaintiff's complaint did not include any indication of what is the creditor's correct name); *Bolouri v. Bank of Am., N.A.*, Case No. 1:10-cv-225, 2010 U.S. Dist. LEXIS 87170, *17-18 (E.D. Va. Aug. 24, 2010) (defendant did not violate the FDCPA by disclosing the Bank of America, N.A. as the creditor to whom the debt is owed and plaintiff did not state a claim for relief). Plaintiff's claim fails to state a claim for which relief may be granted and should be dismissed.

4.     **Plaintiff Fails to State a Claim for Failure to Comply with 15 U.S.C. 1692g(a)(3) (Count IV).**

According to section 1692g(a)(3), a debt collection notice submitted under the FDCPA must include "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector." *Id.* The plain language of the statute does not specify whether a dispute must be made in writing or verbally to overcome the assumption of debt validity. However, subsections (a)(4) and (a)(5) do specify "in writing." Further, subsection (b) states that if the debtor disputes the debt **in writing** within thirty days, the debt collector must cease collection efforts until the debt collector has verified the debt. 15 U.S.C. § 1692g(b). Courts have interpreted subsection (a)(3) in the context of these provisions to find that any debt dispute must be made in writing to prevent the assumption of debt validity. There is a split in precedent on this issue, but the weight of authority and recent rulings demonstrate the "in writing" requirement applies to section (a)(3).

a.     *Courts Are Split on Whether the "In Writing" Requirement Is Implied in Section 1692g(a)(3).*

Section 1692g(a)(3) has been subject of a number of conflicting opinions, discussed in more detail below. *Compare Graziano v. Harrison*, 950 F.2d 107 (3rd Cir. 1991) (holding subsection (a)(3) "contemplates that any dispute, to be effective, must be in writing.") *with Camacho v. Bridgeport Fin., Inc.*, 430 F.3d 1078, 1082 (9th Cir. 2005) (holding "there is no writing requirement implicit in § 1692g(a)(3)"); *see also Jerman v. Carlisle*, 130 S. Ct. 1605, 1610, n. 3 (2010) (acknowledging conflicting authorities but refusing to weigh on the issue because it was not presented in the petition for certiorari).

This Court spoke on the issue only once in an unreported opinion, in which the Court sided with *Camacho* and held that subsection (a)(3) permits oral disputes to overcome the

assumption of debt validity. *Turner v. Shenandoah Legal Group, P.C.*, Case No. 3:06-cv-045, 2006 U.S. Dist. LEXIS 39341 (E.D. Va. 2006) (Dohnal, J.).   In *Turner*, the Eastern District of Virginia analyzed *Camacho* and *Graziano*, finding the reasoning in *Camacho* "more persuasive" as "a proper application of the least sophisticated consumer standard dictated by *U.S. v. Nat'l Fin. Servs., Inc.*, where an unsophisticated consumer, or one with minimal English literacy skills, might only be able to invoke their rights via oral communication." *Id.* at *20.

However, a number of more recent cases nationally urge reconsideration of the reasoning in *Turner*.  Nationstar respectfully urges the Court to reconsider *Turner* and adopt *Graziano* as more persuasive for several reasons: (1) implication of the "in writing" requirement into subsection (a)(3) gives effect to the FDCPA's regulatory scheme and reconciles subsection (a)(3) with subsections (a)(4) and (a)(5); (2) *Graziano*'s reading of the statute is consistent with the accepted rules of statutory construction that literal adherence to the statutory language should yield when it is at odds with the drafter's intent; and (3) the drafters' intent demonstrates the "in writing" requirement is implied in subsection (a)(3).

The Fourth Circuit Court of Appeals has emphasized that, while stare decisis is ordinarily "a preferred course," courts have "judicial power to overrule the earlier rulings" as jurisprudence on a particular issue develops to prove the earlier opinion wrong.  *McMellon v. United States*, 387 F.3d 329, 355 (4th Cir. 2004) (Niemeyer, J., concurring in part and dissenting in part) (emphasizing courts should stay away from "a narrow and mechanical application" of stare decisis because "a court is not required to follow its precedent 'when governing decisions are unworkable or are badly reasoned.'") (quoting *Payne v. Tennessee*, 501 U.S. 808, 827-28 (1991)).  This flexibility in application of the stare decisis is especially true here because the FDCPA jurisprudence is actively evolving; "otherwise one rogue opinion could deprive the law

of the accumulated expertise that stare decisis strives to safeguard." *North Carolina Utilities Com. v. Federal Communications Com.*, 552 F.2d 1036, 1045 (4th Cir. 1977) (concluding stare decisis did not preclude reconsideration of the court's prior holding).

      b.    <u>Graziano*'s Reasoning Gives Effect to the Drafters' Intent of Protecting the Least Sophisticated Consumers*</u>.

In *Graziano*, plaintiff sued the debt collector claiming that the "in writing" language, analogous to the language in Nationstar's FDCPA Letter, violates subsection 1692g(a)(3). In support of his position, plaintiff argued that subsection (a)(3) allows consumer to dispute the debt orally, while subsections (a)(4) and (b) require the same to be done in writing in order to invoke the statutory protections of subsection (b) that the debt collector must cease all collection activities until it verifies the debt. 950 F.2d at 112. In rejecting plaintiff's position, the Third Circuit explained:

> **Adopting [plaintiff's] reading of the statute would thus create a situation in which, upon the debtor's non-written dispute, the debt collector would be without any statutory ground for assuming that the debt was valid, but nevertheless** would not be required to verify the debt or to advise the debtor of the identity of the original creditor and **would be permitted to continue debt collection efforts**. **We see no reason to attribute to Congress an intent to create so incoherent a system**. We also note that there are strong reasons to prefer that a dispute of a debt collection be in writing: a writing creates a lasting record of the fact that the debt has been disputed, and thus avoids a source of potential conflicts.

*Id.* (emphasis added).

In arriving at its conclusion, the court acknowledged authorities to the contrary cited by Plaintiff and the statutory interpretation arguments adopted by courts in those cases. *Id.* (referring to *Bailey v. TRW Receivables Mgmt. Servs., Inc.*, Case No. 90-cv-192, Order at 5-6 (D. Haw. Aug. 16, 1990); *Young v. Credit Bureau of Lockport*, Case No. 86-1121, Memorandum and Order at 3-4 (W.D.N.Y. July 14, 1989); *Harvey v. United Adjusters*, 509 F. Supp. 1218, 1221 (D. Or. 1981)). In those cases, the courts concluded that, because Congress expressly used the "in

22

writing" language in subsections (a)(4) and (a)(5) but omitted it from subsection (a)(3), such omission was intentional. *Id.* (citing *Bailey*, Case No. 90-cv-192, at 5; *Young*, Case No. 86-1121, at 3). In rejecting such reading of the statute, the *Graziano* court explained that, "given the entire structure of section 1692g, the "in writing" requirement must be read into the statute in order for subsection (a)(3) "to be effective." *Id.*

        c.    <u>*Graziano* *Correctly Applied the Rules of Statutory Construction to Promote the Drafters' Intent and Give Meaning to Subsection 1692g(a)(3)*</u>.

*Graziano*'s rationale is consistent with the accepted rule of statutory construction that "strict adherence to the statutory language yields when 'the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *Ingram v. Corporate Receivables, Inc.*, 2003 U.S. Dist. LEXIS 7475, *17-19 (N.D. Ill. May 2, 2003) (quoting *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 243 (1989)). "In such cases, 'the intention of the drafters, rather than the strict language, controls.'" *Id.* (quoting *Ron Pair Enterprises, Inc.*, 489 U.S. at 243).

Ironically, this Court applied the same rule of statutory construction in *Turner* when interpreting another provision of the FDCPA, but ignored it as to section (a)(3). *Turner*, 2006 U.S. Dist. LEXIS 39341, at *32-33 (finding that the plain language of the statute indicates that only the first debt collector has to send out the validation notice pursuant to 1692g, while subsequent debt collectors as to the same debt are relieved from this obligation, but concluding that the drafters' intent controlled over the statutory language and required successive validation notices by subsequent debt collectors). Likewise, the language of subsection (a)(3) must be interpreted to give effect to the drafters' intent of protecting least sophisticated consumers from abusive debt collection practices. As the federal court in *Ingram* explained in adopting *Graziano*:

> Here, we are faced with a situation in which a literal application of subsection (a)(3) would tend to undermine the purposes underlying the validation process contemplated by Section 1692g(a) and (b). **Notices that strictly comply with the language of subsection (a)(3) could cause consumers (whom the law presumes to be "unsophisticated") to advise debt collectors of disputes about alleged debts only orally, and thus to forego the important rights they have under subsections (a)(4), (a)(5) and (b)** if -- but only if -- the dispute is made in writing. **That would have the untoward effect of depriving the unsophisticated consumers, "who are the particular objects of the [FDCPA's] solicitude," of important rights that Congress sought to confer on them.** Thus, by implying a writing requirement in subsection (a)(3), the Court is not implementing a policy preference contrary to congressional intent, but rather is interpreting the statute to avoid an "incoherent result," a result that we believe Congress did not intend.

*Id.* at *19-20 (internal citations omitted, emphasis added).

In *Turner*, the Court found the reasoning in *Camacho* "more persuasive" as "a proper application of the least sophisticated consumer standard dictated by *U.S. v. Nat'l Fin. Servs., Inc.* [the Fourth Circuit opinion], where an unsophisticated consumer, or one with minimal English literacy skills, might only be able **to invoke their rights via oral communication**." *Id.* at *20 (emphasis added).  However, pursuant to the plain language of 1692g – which, according to *Turner*, controls – the least sophisticated consumer can invoke no "rights via an oral communication."  None of the subsections of section 1692g require that a debt collector cease collection efforts when a debt is disputed orally.  On the contrary, subsection 1692g(b) expressly provides that the debt collector must cease collection efforts only if the debt is disputed in writing.  *Id.*  Section 1692g does not even require that the debt collector verify the debt validity upon an oral dispute or provide consumer with proof of the same.  Such obligation is triggered only upon a consumer's **written** request.  15 U.S.C. 1692g(a)(4) and (a)(5).  Therefore, in the absence of the "in writing" implication, subsection 1692g(a)(3) provides no protections under section 1692g and is rendered meaningless – an absurd result that the drafters could not have intended.

d.   *Federal Courts Nationwide Have Adopted* Graziano*.*

Courts in many jurisdictions have followed *Graziano* and ruled that the "in writing" requirement does not violate subsection (a)(3), including at least one court in the Fourth Circuit. *Glen v. Law Office of W.C. French*, Case No. 11-cv-927, 2012 U.S. Dist. LEXIS 6898, *10-13 (D. Md. Jan. 19, 2012) (holding the debt collector's statement that the debt could not be disputed orally did not violate the FDCPA because subsection (a)(3) contains an inherent writing requirement) (citing *Davis v. R & R Prof'l Recovery*, 2009 U.S. Dist. LEXIS 11879, *15-17 (D. Md. Feb. 17, 2009)); *see also Hooks v. Forman Holt Eliades & Ravin LLC*, Case No. 11-cv-2767, 2012 U.S. Dist. LEXIS 115089, *9-13 (S.D.N.Y. Aug. 13, 2012) (adopting *Graziano*, holding that 1692g(a) (3) and 1692g(a) (4) must "be read together in constituting a writing requirement entirely consistent with the Notice at issue in this case"); *McCabe v. Eichenbaum & Stylianou, LLC*, Case No. 11-cv-7403, 2012 U.S. Dist. LEXIS 179129, *5-7 (D.N.J. Dec. 19, 2012) (finding a dunning letter that suggested the debt could be disputed in ways other than in writing was a possible violation of the FDCPA in light of the *Graziano* ruling); *Savage v. Hatcher*, Case No. 2:01-cv-0089, 2002 U.S. Dist. LEXIS 28082, *11-12 (S.D. Ohio Mar. 7, 2002), *rev'd in part on other grounds*, 109 Fed. Appx. 759 (6th Cir. Ohio 2004) (holding the "in writing" language does not violate subsection 1692(a)(3); *Jolly v. Shapiro*, 237 F. Supp. 2d 888, 895 (N.D. Ill. 2002) ("The Court agrees with the Third Circuit Court and the reasoning adopted in *Graziano* and finds that a requirement to dispute a debt in writing is not a violation of § 1692g(a)(3)"); *accord Wallace v. Capital One Bank*, 168 F. Supp. 2d 526, 529 (D. Md. 2001); *Davis v. Healthcare Revenue Recovery Group, LLC*, Case No. 1:07-cv-02970 (D. Md. Doc. No. 14); *Castillo v. Carter*, Case No. 99-cv-1757, 2001 U.S. Dist. LEXIS 2686, *11-12 (S.D. Ind. Feb. 28, 2001); *Sturdevant v. Thomas E. Jolas, P.C.*, 942 F. Supp. 426, 429 (W.D. Wis. 1996);

*Diamond v. Corcoran*, Case No. 5:92-cv-36, 1992 U.S. Dist. LEXIS 22793, *5-6 (W.D. Mich. 1992).

        e.      <u>*Camacho* *Reasoning is Inconsistent with the Notification Purposes of Section 1692g.*</u>

The Ninth Circuit in *Camacho* found that there is no need for the "in writing" implication and that "the plain meaning of subsection (a)(3) does not lead to absurd results because an oral dispute triggers multiple statutory protections," such as a requirement that the debt collector note the dispute in the debtor's credit report pursuant to section 1692e(8) and do not apply payments to the disputed debt pursuant to section 1692h. *Id.* at 1081-1082. The *Camacho* court reads too much into subsection (a)(3).[6] For one, *Camacho* seems to attribute an unusual degree of sophistication to the least sophisticated consumer who would not ordinarily know that such protections are available to her unless so notified. Disclosure requirements of section 1692g, however, do not notify consumer of these rights. *Camacho* also seems to attribute an unusual degree of obtuseness to the Congress, which failed to include in section 1692g a requirement to notify consumers of the availability of these rights despite the very purpose of section 1692g being to notify consumers of their rights under the FDCPA.

In summary, the implication of the in-writing requirement in subsection (a)(3) gives effect to the drafters' intent of protecting consumers from debt collection until after the debt has been verified and reconciles subsection (a)(3) with subsections (a)(4), (a)(5), and (b), which

---

[6] Courts in some other jurisdictions have adopted *Camacho*'s approach. *Mellinger v. Midwestern Audit Serv.*, Case No. 11-cv-11326, 2012 U.S. Dist. LEXIS 15325, *10-11 (E.D. Mich. Feb. 8, 2012) (adopting *Camacho*); *accord In re Almodovar*, AP Case No. 09-cv-0251, 2011 Bankr. LEXIS 428, *8-9 (Bankr. D.P.R. Feb. 3, 2011); *In re Turner*, 436 B.R. 153, 157-158 (M.D. Ala. 2010); *Campbell v. Hall*, 624 F. Supp. 2d 991, 1000 (N.D. Ind. 2009) (collecting authorities); *Vega v. Credit Bureau Enters.*, Case No. 02-cv-1550, 2005 U.S. Dist. LEXIS 4927, *28 (E.D.N.Y. Mar. 29, 2005); *Rosado v. Taylor*, 324 F. Supp. 2d 917, 929 (N.D. Ind. 2004); *King v. Int'l Data Services*, Case No. 01-cv-00380, 2002 U.S. Dist. LEXIS 26426, at *6 (D. Haw. 2002); *Reed v. Smith, Smith & Smith*, Case No. 93-cv-956, 1995 U.S. Dist. LEXIS 22013, at *6-7 (M.D. La. 1995).

contain the in-writing requirement.  Therefore, Nationstar's FDCPA Letter complies with the FDCPA and Plaintiff's claim should be dismissed.

## IV.    CONCLUSION

For all of the above reasons, Defendant Nationstar Mortgage, LLC, respectfully requests that the Court grant its Motion for Judgment on the Pleadings and enter an Order dismissing Plaintiff's claims with prejudice, and grant Defendant any further legal or equitable relief as the Court deems appropriate.

Dated:  April 15, 2013                                        Respectfully submitted,

                                                              **NATIONSTAR MORTGAGE LLC**

                                                              By:   ___/s/ Jason E. Manning_____
                                                                           Of Counsel

John C. Lynch (VSB # 39267)
Jason E. Manning (VSB # 74306)
Counsel for Nationstar Mortgage, LLC
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462
Telephone:  (757) 687-7765
Facsimile:  (757) 687-1504
E-mail: john.lynch@troutmansanders.com
E-mail: jason.manning@troutmansanders.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of April, 2013, I electronically filed the foregoing documents with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/EC participants:

**Counsel for Plaintiff Marlene Dennis**
Dale W. Pittman
The Law Office of Dale W. Pittman, P.C.
112-A W Tabb Street
Petersburg, VA 23803-3212
E-mail: dale@pittmanlawoffice.com

Kristi C. Kelly
Surovell, Isaacs, Petersen & Levy, PLC
4010 University Drive, Second Floor
Fairfax, Virginia 22030
E-mail: kkelly@siplfirm.com

Leonard A. Bennett
Consumer Litigation Associates, P.C.
12515 Warwick Blvd., Suite 101
Newport News, Virginia 23606
E-mail: lenbennett@clalegal.com

Matthew J. Erausquin
Consumer Litigation Associates, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
E-mail: matt@clalegal.com

/s/ Jason E. Manning
John C. Lynch (VSB # 39267)
Jason E. Manning (VSB # 74306)
Counsel for Nationstar Mortgage, LLC
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462
Telephone:  (757) 687-7765
Facsimile:  (757) 687-1504
E-mail: john.lynch@troutmansanders.com
E-mail: jason.manning@troutmansanders.com

20228626v2